UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE MAXIMIZED LIVING, INC.,

    Applicant,

    v.

GOOGLE, INC.,

    Respondent.

_____/

No. C11-80061 MISC CRB (EDL)

**ORDER GRANTING MOTION TO QUASH AND DENYING MOTION FOR ORDER TO SHOW CAUSE**

Now before the Court is John Doe's motion to quash the second subpoena issued by the Clerk's Office pursuant to 17 U.S.C. § 512(h). The Court determines that the matter is suitable for decision without oral argument and deems the matter submitted on the papers. For the reasons set forth below, the motion to quash is GRANTED and the motion for order to show cause is DENIED.

**I. Background**

Applicant Maximized Living, Inc. ("MLI") provides "consulting and practice management services to chiropractors," including suggested "scripts" that chiropractors can use. The scripts are offered to MLI's paying clients and MLI owns a copyright in the scripts. John Doe published MLI's proprietary scripts, without authorization, on an internet blog hosted by Google, Inc. On March 22, 2011, MLI filed a "Request for Identity of Infringers Pursuant to 17 U.S.C. § 512(h)," a provision of the Digital Millennium Copyright Act ("DMCA") which provides for the issuance of subpoenas in certain circumstances to enable copyright holders to ascertain the identity of accused infringers. On the same day, a subpoena issued to Google, Inc., demanding "All documents and electronically stored information reflecting the identity of the person or persons who posted content at http://maximizedlivingbodybygod.blogspot.com/2009/05/maximized-living-scripts.html, including but not limited to their name, email address, IP address, street address, and telephone number." Dkt.

2, Ex. A. Thereafter, John Doe filed a motion to quash the subpoena based on procedural irregularities and substantive challenges to both the subpoena as issued and the DMCA statutory scheme.

In May 2011, Judge Breyer referred the motion to this Court. The Court decided the motion on the papers without oral argument and granted Doe's motion to quash the subpoena because the documentation initially filed with the Court did not meet the statutory requirements of section 512, and because the subpoena sought more information than that which was sufficient to identify the accused infringer. Dkt. #18 at 8 (May 25, 2011 Order). The Court ordered that, if MLI "chooses to re-file a 'Request for Identity of Infringers Pursuant to 17 U.S.C. § 512(h),' it must file a proper declaration in support and limit the subpoena to the topics authorized by the DMCA." Dkt. #18 at 2.

By email to MLI's counsel on May 26, 2011, counsel for John Doe informed MLI that "the subject website content has been taken down." Dkt. # 24, Ex. A.

On October 20, 2011, MLI filed a "Second Request for Identity of Infringers," again asking the Clerk's Office to issue a subpoena to Google to determine the identity of an accused copyright infringer. Dkt. #20. The clerk issued a second subpoena on October 27, 2011, commanding Google to produce "Information sufficient to identify the person or persons who posted content at http://maximizedlivingbodybygod.blogspot.com/2009/05/maximized-living-scripts.html, including but not limited to their name, email address, IP address, street address, and telephone number, but excluding email communications, as permitted by the Digital Millennium Copyright Act." Dkt. #22. John Doe filed the instant motion to quash the second subpoena and motion for an Order to Show Cause for filing the second request for subpoena without prior leave of Court.

**II.     Legal Standard**

The provision governing issuance of a subpoena to identify an infringer, 17 U.S.C. § 512(h)(1)-(2), provides, in part, as follows:

> (1) Request.– A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.
>
> (2) Contents of request.– The request may be made by filing with the clerk–
>     (A) a copy of a notification described in subsection (c)(3)(A);
>     (B) a proposed subpoena; and

2

>  (C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.
>
>  (3) Contents of subpoena. – The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.

17 U.S.C. § 512(c)(3)(A) requires the following elements for notification:

>  (A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
>
>  (I) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
>  (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
>  (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
>  (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
>  (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
>  (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

**III.    Discussion**

MLI's second request for the identity of infringers included: (1) a form of subpoena (Exhibit A); (2) notification to respondent Google, Inc. (Exhibit B); and (3) a sworn declaration by Dr. Ben Lerner (Exhibit C). Dkt. # 20. Because MLI did not file a motion seeking leave of Court for issuance of the second subpoena, John Doe contends that MLI violated the Court's prior order requiring MLI to "demonstrate to this Court that [it] complied with the requirements of the DMCA

3

prior to any subpoena being issued." John Doe further contends that MLI's June 24, 2011, notification does not comply with the DMCA because the infringing material had already been taken down.

### A. Procedural Challenge

First, John Doe contends that by filing a second request for issuance of a subpoena with the Clerk's Office, MLI disregarded the Court's order which required, "If MLI re-files a similar request, it must provide proper notification to Google and demonstrate to this Court that complied with the requirements of the DMCA prior to any subpoena being issued." It would have been preferable for MLI to file a motion seeking leave of Court or otherwise direct the second request to the Court's attention rather than simply refiling it with the Clerk's Office. However, John Doe has not been prejudiced by MLI's failure to file a motion for leave of Court because John Doe's attorney received electronic notice of MLI's subpoena request via ECF and the parties have had a chance to address the merits of the subpoena on the present motion to quash. Furthermore, Doe does not contend that MLI failed to cure the deficiencies of the first subpoena that the Court found to be insufficient in the May 25, 2011 Order. The Court therefore denies John Doe's motion for issuance of an Order to Show Cause.

### B. No Infringing Activity at the Time of Notification

Second, John Doe argues that the subpoena is invalid because the infringing material had been removed from the blog hosted by Google before MLI requested issuance of the second subpoena, and because the DMCA only authorizes the issuance of a subpoena regarding currently infringing material and does not provide a remedy for past infringement.

John Doe has filed a declaration stating that on May 25, 2011, he deleted the blog containing the MLI script that was the subject of MLI's subpoena. Dkt. # 25 ¶ 2. Doe's attorney so notified counsel for MLI by email dated May 26, 2011. Dkt. # 24, Ex. 1. MLI has offered no evidence to demonstrate that the infringing material remains on the website or was available at the time MLI sent its June 24, 2011 Notification Letter to Google or when MLI filed its second request for issuance of a subpoena by the Clerk's Office. MLI points out that the second Lerner affidavit states that the infringing material "has been published" at the website identified in the subpoena and that

"Dr. Lerner therefore has a good faith belief that John Doe's publication 'is not authorized' and that the MLI's copyright has been violated." Opp. at 10; Dkt. # 20, Ex. B ¶ 5 (6/30/2011 Declaration of Dr. Ben Lerner). MLI does not contend that the allegedly infringing material was being posted at the time of executing the affidavit in support of the DMCA notification. Rather, MLI argues that this Court's prior order granting leave to file a new request would be rendered meaningless if John Doe were simply permitted to take down his infringing material. Opp. at 9. This argument fails, however, because the issue whether the infringing activity must be current or ongoing was not presented to the Court on the earlier motion to quash.

A copyright owner's request for subpoena pursuant to § 512(h) must be accompanied by the notification described in subsection (c)(3)(A). 17 U.S.C. § 512(h)(2)(A). Doe contends that the notification in support of MLI's second subpoena cannot comply with § 512(c)(3)(A)(iii), which requires identification of the material "that is to be removed or access to which is to be disabled," when the infringing material had already been taken down. Doe argues that § 512 only addresses infringement existing at the time the subpoena is served and does not provide a remedy for past infringement. In support of his argument that § 512 was not intended to remedy past infringement, John Doe highlights the present tense of the verbs used in the statute, which requires "[i]dentification of the material that is claimed **to be** infringing or to be the subject of infringing activity and **that is to be removed or access to which is to be disabled** and **information reasonably sufficient to permit the service provider to locate the material."** Mot. at 4 (quoting § 512(c)(3)(A)(iii)) (emphasis added in original).

Doe further contends that the subpoena power of § 512(h) is predicated upon procedures for notifying an ISP and for taking down infringing material, and that MLI failed to identify currently fringing material that Google could have removed, blocked or taken down. In support of this argument, Doe relies on the District of Columbia Circuit's opinion analyzing the statutory language and legislative history of the DMCA in <u>Recording Indus. Ass'n of America, Inc. ["RIAA"] v. Verizon Internet Servs., Inc.</u>, 351 F.3d 1229 (D.C. Cir. 2003). There, the district court denied an internet service provider's ("ISP") motion to quash a subpoena served pursuant to the DMCA seeking subscriber information about peer-to-peer ("P2P") users who had allegedly engaged in

5

1  copyright infringement. In Re Verizon Internet Servs., Inc., 257 F. Supp. 2d 244, 267-68, 275
2  (D.D.C. 2003), rev'd in part, RIAA, 351 F.3d 1229. The D.C. Circuit reversed, holding that §
3  512(h) of the DMCA authorized service of a subpoena only on "an ISP engaged in storing on its
4  servers material that is infringing or the subject of infringing activity," and not an ISP engaged only
5  in transmitting copyrighted material on behalf of others. 351 F.3d at 1233. Accord In re Charter
6  Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771 (8th Cir. 2005). Doe
7  emphasizes the present tense used in the RIAA opinion to support his argument that § 512 was not
8  intended to allow copyright owners to seek redress for past infringement: "'a subpoena may be
9  issued only to an ISP engaged in storing on its servers material that *is* infringing or the subject of
10 infringing activity.'" Mot. at 7 (quoting RIAA, 351 F.3d at 1233).

11     MLI responds that there is no case law that requires the copyright infringing activity to be
12 present at the time the DMCA notification is issued. MLI is correct that RIAA did not squarely
13 address the question here as to whether the copyright owner may request a subpoena to obtain
14 information regarding only current infringing activity that is infringing at the time of notification or
15 issuance of the subpoena. Rather, the court decided whether § 512(h) applies to an ISP acting only
16 as a conduit for data transferred between two internet users, such as persons sharing peer to peer
17 files, holding it did not. But in so holding, the appellate court conducted a thorough analysis of the
18 statute and its legislative history. It determined that § 512 creates four safe harbors immunizing
19 ISPs from liability for copyright infringement under specific conditions. Id. at 1234 (citing §
20 512(a)-(d)). The appellate court noted the importance of "the so-called notice and take-down
21 provision" of subsections (b), (c) and (d), which "makes a condition of the ISP's protection from
22 liability for copyright infringement that 'upon notification of claimed infringement as described in [§
23 512](c)(3),' the ISP 'responds expeditiously to remove, or disable access to, the material that is
24 claimed to be infringing.'" RIAA, 351 F.3d at 1234 (citing 17 U.S.C. §§ 512(b)(2)(E), 512
25 (c)(1)(C), and 512 (d)(3)). The RIAA court reasoned that infringing material that is distributed via
26 P2P file sharing is located in the computer or storage device of the individual user, and is not stored
27 by the ISP. "No matter what information the copyright owner may provide, the ISP can neither
28

1  'remove' nor 'disable access to' the infringing material because that material is not stored on the
2  ISP's servers." 351 F.3d at 1235.

3  Doe has the more persuasive argument that § 512(h) does not authorize issuance of a
4  subpoena to obtain the identifying information as to past infringement in light of the plain language
5  and purpose of the DMCA, especially its "notice and take-down provisions" to which the subpoena
6  power is integrally related. In RIAA, the D.C. Circuit rejected the copyright owners' argument that
7  even if the ISP could not remove infringing material stored on a subscriber's computer, and the
8  copyright owner could not satisfy the requirement of § 512(c)(3)(A)(iii) to identify material to be
9  removed by the ISP, a notification is effective if it "substantially" satisfies the required information
10 because the ISP can identify the infringer. "According to the RIAA, the purpose of § 512(h) being
11 to identify infringers, a notice should be deemed sufficient so long as the ISP can identify the
12 infringer from the IP address in the subpoena." 351 F.3d at 1236. The court of appeals rejected this
13 broad reading of the statute, finding that "the defect in the RIAA's notification is not a mere
14 technical error; nor could it be thought 'insubstantial' even under a more forgiving standard." Id.
15 The court held: **"The RIAA's notification identifies absolutely no material Verizon could**
16 **remove or access to which it could disable,** which indicates to us that § 512(c)(3)(A) concerns
17 means of infringement other than P2P file sharing." Id. (emphasis added). Although the RIAA
18 court was distinguishing an ISP's storage functions from its transmission functions, the court
19 focused on the limited conditions under which a subpoena may issue to an ISP pursuant to § 512(h)
20 and determined that the ISP activities described in § 512(c) (as well as §§ 512 (b) and (d)) are
21 "**susceptible to the notice and take down regime** of §§ 512(b)-(d), **of which the subpoena power**
22 **of § 512(h) is an integral part**." Id. at 1237 (emphasis added).

23 In In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, 776-77
24 (8th Cir. 2005), the Eighth Circuit agreed with the D.C. Circuit on the issue of whether § 512(h)
25 authorizes a subpoena on an ISP which only transmits, but does not store, the allegedly infringing
26 material. The Eighth Circuit distinguished the safe harbor under § 512(a), which does not require
27 notification to an ISP that acts as a mere conduit for the transmission, from the safe harbors
28 established under §§ 512(b)-(d), which do require notification to the ISP, and determined that "a

7

1 specific purpose of the notification provision is to allow an ISP, after notification, the opportunity to
2 remove or disable access to infringing material and thereby protect itself from liability for copyright
3 infringement." 393 F.3d at 776. The court reasoned that "[t]he absence of the
4 remove-or-disable-access provision (and the concomitant notification provision) [in the safe harbor
5 provision of § 512(a)] makes sense where an ISP merely acts as a conduit for infringing
6 material—rather than directly storing, caching, or linking to infringing material – **because the ISP**
7 **has no ability to remove the infringing material from its system or disable access to the**
8 **infringing material.**" Id. at 776 (emphasis added). The Eighth Circuit agreed with RIAA to hold
9 held that a copyright owner may not request a § 512(h) subpoena for an ISP which merely acts as a
10 conduit for P2P file-sharing. Id. at 776-77.

11       This Court agrees with the reasoning of RIAA and holds that the subpoena power of § 512(h)
12 is limited to currently infringing activity and does not reach former infringing activity that has
13 ceased and thus can no longer be removed or disabled. Most importantly, the plain language of the
14 statute describes notification requirement strictly in the present tense: "Identification of the material
15 **that is claimed to be infringing or to be the subject of infringing activity** and **that is to be**
16 **removed or access to which is to be disabled**." § 512(c)(3)(A)(iii) (emphasis added). Further, past
17 infringing activity that has been removed by the infringer cannot be susceptible to the notice and
18 take down provisions of the DMCA. RIAA, 351 F.3d at 1237. To the extent that MLI argues that
19 the DMCA not only provides safe harbor for parties who unknowingly host infringing materials, but
20 also authorizes the use of subpoena power for the broader purpose of "holding accountable the real
21 illegal actor - the anonymous party who illegally published the copyrighted material by providing
22 for the disclosure of their identity," Opp. at 10, new remedies for past infringing material that would
23 not be subject to a take-down notice would be better "addressed in the first instance by the
24 Congress." RIAA, 351 F.3d 1238.

25       Because MLI cannot identify infringing material that could be removed by Google, or access
26 to which could be disabled, MLI fails to satisfy the requirement of § 512(c)(3)(A)(iii). The motion
27 to quash is therefore granted.

28

### C. First Amendment Challenge

John Doe reasserts his First Amendment challenge to the DMCA on the ground that the blog post was protected anonymous political speech. Having granted the motion to quash, the Court declines to reach John Doe's constitutional challenge to the statute.

## IV. Conclusion

The motion to quash is GRANTED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: December 22, 2011

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge